# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Castillo,<br><br>                Plaintiff,<br><br>v.<br><br>City of Tempe, et al.,<br><br>                Defendants. | No. CV-12-02225-PHX-ROS<br><br>**ORDER** |

Before the Court are the parties' cross-motions for summary judgment. For the following reasons, Defendants' motion for summary judgment will be denied in part and granted in part. Plaintiff's cross-motion for summary judgment will be denied.

## BACKGROUND

The undisputed facts are as follows. On June 4, 2011, Plaintiff traveled to Mill Avenue in Tempe Arizona to celebrate his twenty-first birthday with his two brothers, Joel Castillo and Hilario Haro, and brother-in-law, Luis Velasquez. The group visited four bars on Mill Avenue over the course of approximately four hours, during which Plaintiff consumed approximately five alcoholic beverages. As the group made their way to Jimmy John's sandwich shop, two women began mocking Plaintiff and Velasquez for wearing similar shirts. When the boyfriends of the two women saw the women interacting with Plaintiff and Velasquez, the boyfriends became violent and fought Plaintiff and Velasquez. To defuse the fight, Joel Castillo directed Plaintiff and Velasquez into the Jimmy John's restaurant.

| 1 | Sergeant Breen and Officers Miller and Berman from the Tempe Police |
| 2 | Department arrived on the scene shortly thereafter. One of the women involved told |
| 3 | Sergeant Breen that Plaintiff and Velasquez had been involved in the fight. Sergeant |
| 4 | Breen directed Officers Blank and Warbington, who had just arrived on the scene, to "go |
| 5 | get those guys that are involved." Officer Blank entered Jimmy John's and escorted |
| 6 | Velasquez out of the restaurant without incident. Officer Warbington entered Jimmy |
| 7 | John's and approached Plaintiff. The parties dispute whether Officer Warbington |
| 8 | identified himself before attempting to place Plaintiff in an O'Donnel Continuous Control |
| 9 | System hold, in which he took physical control of Plaintiff's right arm. Officer |
| 10 | Warbington then escorted Plaintiff out of the restaurant. There were approximately 75- |
| 11 | 100 people in close proximity to them. Plaintiff appeared confused and asked "Why are |
| 12 | you doing this, I didn't do anything, what is going on?"

As Plaintiff and Officer Warbington reached the front door, Sergeant Breen held the front door open. Officer Warbington alleges Plaintiff tensed his right arm and attempted to pull out of Officer Warbington's grasp, though Plaintiff denies he was resisting arrest. Sergeant Breen and Officer Warbington separately attempted to bring Plaintiff to the ground by using "leg sweeps," but their attempts were unsuccessful. Eventually Officer Warbington, Sergeant Breen, and Plaintiff found themselves on the ground. While on the ground Sergeant Breen and Officer Warbington told Plaintiff to turn onto his stomach and put his hands behind his back. It appears Plaintiff did not comply with the officers' request.

Sergeant Breen employed his Taser onto Plaintiff's lower back. Officer Warbington alleges Plaintiff continued to struggle, so he used the Taser a second time, but the Taser seemed to be ineffective against Plaintiff. Officer Warbington then decided to punch Plaintiff in the face multiple times with his closed fist. Plaintiff again inquired "Why are you doing this?" Officer Warbington used the Taser for a third time and then punched Plaintiff in the face at least three or four more times. At that point Plaintiff appeared to be unconscious and was bleeding from his eyes. Officer Warbington and

Sergeant Breen handcuffed Plaintiff. The parties *dispute* whether Officer Warbington continued to strike Plaintiff after he was unconscious and the handcuffs were in place. The Tempe Fire Department assessed Plaintiff's injuries and determined he should be transported to the hospital for further examination and treatment. Plaintiff was admitted to intensive care and intubated. Plaintiff was later convicted of Disorderly Conduct in violation of A.R.S. § 13-2904(A)(1) based on his involvement with the fight prior to entering Jimmy John's.

Plaintiff filed his complaint against the City of Tempe, the Tempe Police Department, Officer Berman, Officer Miller, Officer Blank, Officer Warbington, and Sergeant Breen in Maricopa County Superior Court in June 2012. Because the complaint alleged claims for excessive use of force, failure to investigate, and an equal protection violation under 42 U.S.C. § 1983, Defendants removed to federal court in October 2012. Doc. 1. In July 2013, the Court issued its amended Rule 16 scheduling order, setting November 29, 2013 as the deadline for dispositive motions. In October 2013, the parties stipulated to dismiss Defendants Breen, Blank, Berman, and Miller. In November 2013, they stipulated to dismiss Counts II (Conspiracy) and III (Title 42 U.S.C. § 1983, Equal Protection—Class of One). Defendants moved for summary judgment on Plaintiff's remaining claims in November 2013. In January 2013, Plaintiff responded and cross-moved for summary judgment.

## ANALYSIS

**I. Legal Standard**

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*,

477 U.S. at 248.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: either (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine disputes of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine dispute remains. *Celotex*, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by simply "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. The party opposing summary judgment must also establish the admissibility of the evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 285 F.3d 764, 773 (9th Cir. 2002) (a court deciding summary judgment motion "can only consider admissible evidence"); *see also Beyene v. Coleman Sec. Services, Inc*., 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). A party simply cannot avoid summary judgment being entered against it by pointing to inadmissible evidence. *See* Fed. R. Civ. P. 56, 2010 Advisory Committee Notes ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

When ruling on a summary judgment motion, the court must view every inference drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 601 (1986). The court does not make credibility determinations with respect to evidence offered. *See T.W. Elec*., 809 F.2d at 630–31 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is therefore

not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

**II. Plaintiff's Cross-Motion for Summary Judgment**

As an initial matter, Plaintiff's cross-motion for summary judgment fails to comply with the Courts' Rule 16 scheduling order. The order states, "[a]ll dispositive motions shall be filed no later than November 29, 2013." Doc. 33 at 3. And Plaintiff filed his cross-motion for summary judgment over two months after this deadline, on January 31, 2014. *See* Doc. 58.

Because the deadline to file dispositive motions had passed when it was filed, the Court construes Plaintiff's cross-motion for summary judgment as a motion to amend the Rule 16 scheduling order. Whether this request should be granted is governed by Fed. R. Civ. P. 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order. *Jackson v. United States*, 2012 WL 2190815, *1 (D. Haw. June 13, 2012). Indeed, "[t]he pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic v. S. California Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

Plaintiff has failed to demonstrate good cause to amend the Rule 16 scheduling order, as Plaintiff has provided no explanation why, despite his diligence, he was unable to file a motion for summary judgment by November 2013. *See Zivkovic*, 302 F.3d at 1087. As set forth below, the Court agrees with Plaintiff that "obvious issues of fact existed in this case which likely would require trial to resolve." Doc. 67 at 6. Therefore, Plaintiff was understandably "surprised to receive Defendants' Motion for Summary Judgment." *Id.* However, this "surprise" does not explain why Plaintiff assumed his motion for summary judgment was warranted, particularly given that many facts remain

in dispute. Plaintiff's cross-motion for summary judgment will therefore be denied.

**III. Defendants' Motion for Summary Judgment**

While the Court sees no cause to amend its Rule 16 scheduling order to accommodate Plaintiff's cross-motion for summary judgment, the Court shares Plaintiff's surprise that Defendants decided to strain valuable judicial resources by filing a motion for summary judgment when there exist obvious disputes of material fact. It seems common human experience with the undisputed facts in this case would have shepherded defense counsel away from filing this motion. Defendants' motion will be granted in part to dismiss the Tempe Police Department as a defendant.

**A. Excessive Use of Force**

Plaintiff's chief claim alleges Officer Warbington used excessive force when arresting him. This claim is analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The inquiry is whether the officer's actions were "objectively reasonable" under the circumstances. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments…about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

In making a reasonableness determination, the Court must first assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating "the type and amount of force inflicted." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citations omitted). Second, the Court must evaluate the government's interest in the use of force. *Id*. In assessing the importance of the government's interest, the Court looks to: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Finally, the Court must "balance the gravity of the intrusion on the individual against the government's

need for that intrusion." *Glenn*, 673 F.3d at 871 (citations omitted). The Ninth Circuit has cautioned "summary judgment…in excessive force cases should be granted sparingly" because balancing the individual's and government's respective interests "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citations omitted). Defendants' request for summary judgment on Plaintiff's excessive use of force claim will be denied.

There is no dispute whether (1) Officer Warbington and Sergeant Breen's decision to detain Plaintiff was lawful, (2) Officer Warbington and Sergeant Breen had the authority to use reasonable force to effect the detention, (3) Sergeant Breen's initial use of the Taser on Plaintiff was reasonable, and (4) Officer Warbington could use closed-fist strikes against Plaintiff, though not to Plaintiff's face. *See* Doc. 50 at 9. However, the Court is at a loss as to how Defendants can reasonably contend there are no genuine disputes of material fact as to whether Officer Warbington punching Plaintiff in the face was reasonable.

With regard to this latter use of force, the parties first dispute the type and amount of force that was used. Indeed, one of Plaintiff's witnesses testified to seeing "more than 15" strikes to Plaintiff's face, some of which "came after Plaintiff had been handcuffed and knocked unconscious." Doc. 59-1 at 62. Another witness testified that Officer Warbington

> got on top of him like that and he – he had his hands actually underneath his legs…So he had his legs over his arms. And then the other officer was putting him in the zip cuffs…And then he raised his hand up and he hit him…A couple of times in the back of the head. Maybe the other times he reached around the side of his head and actually hit him in the face around his eye somewhere. He started bleeding….

Officer Warbington, however, alleges he hit Plaintiff between six and eight times in the face, and stopped when Plaintiff "appeared to be disoriented and we were able to turn him onto his stomach and secure him in handcuffs." Doc. 51-1 at 34. The parties also dispute and offer admissible evidence in support of their positions regarding whether

- 7 -

Plaintiff posed an immediate threat to the safety of the officers and whether Plaintiff was actively resisting arrest. *Compare* Doc. 58 at 6 (Plaintiff "did not try to punch, kick, push or otherwise strike Officer Warbington or Sergeant Breen.") *with* Doc. 51-1 at 33 (Plaintiff "continued struggling with us after we exited the restaurant. At that point, [he] believed it was necessary to detain [Plaintiff] on the sidewalk as there were approximately 75-100 people in close proximity to our location."). The Court thus cannot perform the balancing test required by the third factor of the Ninth Circuit's reasonableness determination, as the many disputed facts in the first two factors undoubtedly require "a jury to sift through the disputed contentions" to properly balance the individual's and government's respective interests. *Santos*, 287 F.3d at 853. Summary judgment will therefore be denied as to the reasonableness of Officer Warbington's use of force.[1]

### B. Qualified Immunity

Defendants next argue even if Officer Warbington's use of force was unreasonable, he is still entitled to qualified immunity. Doc. 50 at 11. Qualified immunity shields government officials from personal liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). The qualified immunity inquiry consists of two parts: (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) if so, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. at 815-16. A right is "clearly established" if "it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010) (quoting *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003)). Qualified immunity allows for mistaken judgments and

---

[1] The Court nonetheless notes that given the amount of eye-witness testimony proffered by Plaintiff describing Officer Warbington's "graphic" conduct, and the fact that Plaintiff was unarmed and ostensibly detained for a relatively minor crime (disorderly conduct), the facts speak volumes in favor of a judgment for Plaintiff on excessive force.

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1987). However, all inferences "must be drawn in favor of the non-movant, even when, as here, a court decides only the clearly-established prong of the standard." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Officer Warbington is not entitled to summary judgment based on qualified immunity. As discussed above, the parties dispute the amount of force used and whether Plaintiff was resisting arrest. Drawing all inferences in favor of Plaintiff, a jury could plainly conclude Plaintiff was not resisting arrest, was entirely unaware of why he was being arrested, and was thus unable to follow the officer's commands. *See* Doc. 59-1 at 61. This is particularly the case since Plaintiff was unarmed at the time and alleges he "did not try to punch, kick, push or otherwise strike Officer Warbington or Sergeant Breen." Doc. 58 at 6. Plaintiff has also provided testimony that officer Warbington continued to strike Plaintiff after he was knocked unconscious and even after he was handcuffed. *See e.g.*, Doc. 59-1 at 63. In circumstances such as these, the officer's use of force would have violated Plaintiff's Fourth Amendment rights. And only an incompetent officer would fail to realize that using closed-fists to punch Plaintiff's face, even after Plaintiff is handcuffed, until he is knocked unconscious and bleeding from the eyes, violates Plaintiff's Fourth Amendment rights. *Cf. Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007). The Court recognizes Officer Warbington provides a different narrative of the events. *See* Doc. 50 at 12. However, again all inferences belong to Plaintiff on the issue of qualified immunity on summary judgment. And given the abundance of material facts in dispute, the Court cannot determine whether a reasonable officer would believe Officer Warbington's use of force was lawful. *Santos v. Gates*, 287 F.3d 846, 860 (9th Cir. 2002) ("Until the jury makes those decisions, we cannot know, for example, how much force was used, and, thus, whether a reasonable officer could have mistakenly believed that the use of that degree of force was lawful."); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Defendants' request for summary judgment on qualified immunity will therefore be denied.

### C. State Law Claims Regarding Unjustified Use of Force

In light of the above analysis, summary judgment will also be denied on Plaintiff's state law claims regarding unjustified use of force. Plaintiff brings state law claims of battery (Count V), negligence, gross negligence, and recklessness (Count VI), and negligence per se (Count VII) (citing A.R.S. § 13-3881). Defendants concede these claims are predicated on a finding that Officer Warbington exceeded his lawful right to use force. *See* Doc. 64 at 12. As discussed above, multiple disputes of material fact exist regarding the reasonableness and therefore lawfulness of Officer Warbington's use of force. *See also Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1016 (D. Ariz. 2012). Summary judgment on Plaintiff's state law claims regarding the use of force will therefore be denied.

### D. IIED, NIED, and Punitive Damages

Likewise, summary judgment will be denied on Plaintiff's claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED). To establish a claim for IIED, "[a] plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554 (Ct. App. 1995). "A plaintiff may recover damages for [NIED] resulting from conduct by the defendant that placed the plaintiff in fear for his own safety or security… [provided] the mental anguish resulting from the defendant's conduct is accompanied by, manifests as, or develops into bodily harm." *Borunda v. Rico*, 2013 WL 6327652, *5 (Ariz. Ct. App. 2013) (citing *Quinn v. Turner*, 155 Ariz. 225, 227–28 (Ariz. Ct. App. 1987)). Plaintiff has provided evidence that Officer Warbington placed him in fear of his own safety and that he suffered emotional and bodily harm as a result. *See, e.g.*, Docs. 59-1 at 11, 59-2 at 2. Further, as discussed above, genuine disputes of material fact remain with regard to "whether the amount of force used [by Officer Warbington] crosses from reasonable to unreasonable." *See* Doc. 64 at 13. And Defendants concede that a determination of

whether Officer Warbington's behavior is extreme and outrageous may require a jury to assess his credibility *See* Doc. 68 at 12. Summary judgment will therefore be denied on Plaintiff's IIED and NIED claims.

Defendants' request for summary judgment on Plaintiff's punitive damages claim will also be denied. "It is well-established that a jury may award punitive damages under section 1983 …when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). Again, genuine disputes of material fact exist regarding the reasonableness of Officer Warbington's use of force. In particular, Plaintiff has provided testimony of witnesses alleging officer Warbington continued to strike Plaintiff after he was knocked unconscious and even after he was handcuffed. *See .e.g.*, Doc. 59-1 at 63. A jury could easily find such use of force "recklessly or callously indifferent to [Plaintiff's] constitutional rights." *Dang*, 422 F.3d at 807. Plaintiff is therefore entitled to a jury instruction on punitive damages.

### E. Liability of Tempe and Tempe Police Department

Last, Defendants argue the Tempe Police Department is not a juridical entity and therefore cannot be held liable for Officer Warbington's conduct. Defendants further argue even if the Tempe Police Department were a juridical entity, summary judgment is warranted in favor of the City of Tempe and the Tempe Police Department since Officer Warbington's use of force was reasonable. Doc. 50 at 15-16. As discussed above, genuine disputes of material fact remain with regards to the reasonableness of Officer Warbington's use of force. And Defendants do not dispute Officer Warbington was subject to the City's control and acting in furtherance of the City's interests. The City of Tempe can therefore be held liable for Plaintiff's state law claims under a theory of respondeat superior. *See Engler v. Gulf Interstate Eng'g, Inc.*, 227 Ariz. 486, 491 (Ariz. Ct. App. 2011) *aff'd*, 230 Ariz. 55 (Ariz. 2012). Defendants are correct, however, that the Tempe Police Department is not a juridical entity subject to liability in this case. *See*

*Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487 (Ariz. Ct. App. 2010); *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 886 (D. Ariz. 2008). The Tempe Police Department will therefore be dismissed.

Accordingly,

**IT IS ORDERED** Defendant's motion for summary judgment (**Doc. 50**) is **DENIED IN PART AND GRANTED IN PART**. The Clerk of Court is directed to dismiss Defendant Tempe Police Department from this case.

**IT IS FURTHER ORDERED** Plaintiff's cross-motion for summary judgment (**Doc. 58**) is **DENIED**. A separate order will issue setting jury trial and related deadlines.

Dated this 18th day of September, 2014.

Honorable Roslyn O. Silver
Senior United States District Judge